Dawn McCraw, WA # 54543
8245 N. 85ᵗʰ Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (818) 600-5485
E: dawn@pricelawgroup.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**RICHLAND DIVISION**

|  |  |
|---|---|
| JD BENNETT,<br><br>       Plaintiff,<br><br>vs.<br><br>TRANS UNION, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; WEBBANK, and BLST HOLDING COMPANY, LLC d/b/a FINGERHUT,<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, *15 U.S.C. § 1681*** |

Plaintiff, JD Bennett ("Plaintiff" or "Mr. Bennett"), by and through the undersigned counsel, brings this Complaint and Demand for Jury Trial ("Complaint") against Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), WebBank, and BLST Holding Company, LLC d/b/a Fingerhut ("Fingerhut"), together as "Defendants," alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

**JURISDICTION AND VENUE**

1.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681, *et seq*.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.    Defendants regularly transact business within the District. Defendants regularly direct business in the District. Defendants voluntarily and purposefully avail themselves of the protections of the District, such that personal jurisdiction is established.

**PARTIES**

4.    Plaintiff, JD Bennett, is a natural person who resides in Benton County, Washington. Plaintiff is a "consumer as that term is defined by 15 U.S.C. § 1681a(c).

5.    Experian and Trans Union regularly compile and distribute consumer credit information in exchange for monetary compensation. Therefore, Experian and Trans Union are "consumer reporting agenc[ies]" as defined in 15 U.S.C. § 1681a(f).

6.    Experian maintains a principal place of business located at 475 Anton Boulevard, Cost Mesa, California 92626. Experian may be served at its principal place of business.

7.    Trans Union maintains a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union may be served through its Registered Agent, c/o Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, Illinois 36106.

8.    WebBank issues the lines of credit for Fingerhut credit accounts.

9.      WebBank and Fingerhut regularly furnish consumer credit information to credit reporting agencies. Therefore, WebBank and Fingerhut are "furnishers" of consumer credit information as that term is contemplated in 15 U.S.C. § 1681s-2.

10.     WebBank maintains a principal place of business located at 215 South State Street, Suite 1000, Salt Lake City, Utah 84111. WebBank may be served through its Registered Agent, c/o Corporation Service Company, located at 15 West South Temple, Suite 600, Salt Lake City, Utah 84101.

11.     Fingerhut maintains a principal place of business located at 6250 Ridgewood Road, St. Cloud, Minnesota 56303. Fingerhut may be served at its principal place of business.

12.     At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

13.     On or about May 1, 2022, Plaintiff received an alert from Experian.

14.     The Experian alert indicated that WebBank/Fingerhut furnished information to Experian indicating that Plaintiff was deceased.

15.     On or about May 1, 2022, Plaintiff reviewed his Experian consumer report.

16.     Plaintiff observed that Experian reported a deceased notation in two tradelines.

17.     Specifically, Experian reported "consumer reported as deceased" in the "payment status" field of his Fetti Fingerhut/Webbank account (account number 636992XXXXXXXXXX, opened March 30, 2022) ("the March Account") tradeline.

18.     Experian also reported "deceased" in the "responsibility" field of the March Account tradeline.

19.     Additionally, Experian reported "consumer reported as deceased" in the "payment status" field of his Webbank/Fingerhut account (account number 636992XXXXXXXXXX, opened January 27, 2022) ("the January Account") tradeline.

20.     Experian also reported "deceased" in the "responsibility" field of the January Account.

21.     Experian indicated that Plaintiff "may not have enough credit history for [Experian] to generate [his] FICO Score."

22.     Upon information and belief, Experian was unable to calculate Plaintiff's Experian FICO Score because Experian was reporting that Plaintiff was deceased.

23.     On or about May 1, 2022, Plaintiff called Experian to dispute the deceased reporting.

24.     Upon information and belief, Experian informed Plaintiff that the deceased reporting came from Fingerhut.

25.     On or about May 2, 2022, Plaintiff called Fingerhut.

26.     Upon information and belief, Fingerhut informed Plaintiff that it began reporting Plaintiff as deceased on April 12, 2022.

- 4 -

27.     Upon information and belief, Fingerhut informed Plaintiff that it would call him back on May 3, 2022, with an explanation.

28.     Plaintiff did not receive a phone call from Fingerhut.

29.     On or about May 2, 2022, Plaintiff went to his local Social Security Administration ("SSA") office.

30.     Plaintiff learned that he was listed as "deceased" in the SSA's records.

31.     The SSA assured Plaintiff that the records would be corrected within twenty-four hours.

32.     On or about May 3, 2022, Plaintiff requested copies of his Experian, Equifax, and Trans Union consumer reports by mail.

33.     Plaintiff wanted to make sure that his consumer reports were corrected.

34.     Upon information and belief, Experian, Equifax, and Trans Union all received notice of Plaintiff's request.

35.     However, Plaintiff did not receive copies of his Experian, Equifax, or Trans Union consumer reports in response to his request.

36.     On or about May 3, 2022, Fingerhut sent the "Estate of JD Bennett" a letter.

37.     The letter indicated that Fingerhut

completed [its] review of the benefit application filed under the SafeLine Account Protection Plus Plan and your request has been approved. However, the Statement Ending Balance on the statement as of the date of death is zero; therefore, no benefit amount is due under the Terms and Conditions of the SafeLine Account…

38.    Plaintiff was very confused as he did not file a "benefit application" with Fingerhut.

39.    Upon information and belief, Fingerhut initiated a "benefit application" on Plaintiff's behalf after receiving his phone call on or about May 2, 2022.

40.    On or about May 4, 2022, Fingerhut sent "JD Bennett" a letter.

41.    The letter indicated that the Social Security Administration ("SSA") verified that Plaintiff was deceased.

42.    Plaintiff received the letter in or around the second week of May 2022.

43.    Plaintiff was confused by the letter; the SSA assured him that its records would be updated by the end of the day on May 3, 2022.

44.    Plaintiff then contacted the SSA and confirmed that the SSA's records had been corrected.

45.     On or about May 19, 2022, Plaintiff received a letter from the Social Security Administration ("SSA").

46.    The letter indicated that the SSA's records wrongly indicated that Plaintiff was deceased.

47.    The letter also indicated that one of the reasons this may have happened is because the SSA collects information from many sources, including financial institutions.

48.    Upon information and belief, WebBank and Fingerhut furnished information to the SSA indicating that Plaintiff was "deceased."

49.    Upon information and belief, the SSA's records showed that Plaintiff was deceased because of the information furnished by WebBank and Fingerhut.

50.     Upon information and belief, had WebBank and Fingerhut not furnished information to the SSA indicating that Plaintiff was "deceased," Plaintiff would not have been marked as "deceased" in the SSA's records.

51.     On or about May 23, 2022, Experian sent Plaintiff an email.

52.     The email indicated that Experian was unable to honor Plaintiff's request for a copy of Plaintiff's Experian consumer report.

53.     Experian indicated that it was unable to honor Plaintiff's request because it was unable to verify Plaintiff's identity.

54.     Upon information and belief, Experian was unable to verify Plaintiff's identity because Experian was reporting Plaintiff as "deceased."

55.     In or around late May 2022, Plaintiff applied for a personal loan through non-party Upgrade, Inc. ("Upgrade").

56.     Plaintiff applied for the personal loan because he received a notification informing him that he had "good odds" of being approved.

57.     Plaintiff also hoped to use the personal loan to pay off some of his bills.

58.     Upon information and belief, Upgrade requested Plaintiff's consumer report and information from both Trans Union and Experian.

59.     Upon information and belief, both Trans Union and Experian were reporting Plaintiff as "deceased" at the time.

60.     Upon information and belief, both Trans Union and Experian provided information to Upgrade indicating that Plaintiff was deceased, had no credit score, and/or that Plaintiff had no credit file.

61.     On or about May 31, 2022, Upgrade sent Plaintiff a letter denying him for the personal loan.

62.     The letter indicated that Plaintiff was denied because Upgrade was "unable to find credit profile at bureau."

63.     Upon information and belief, Upgrade was "unable to find" Plaintiff's credit profile because Trans Union and Experian were reporting that Plaintiff was deceased, had no credit score, and/or that Plaintiff had no credit file.

64.     On or about June 3, 2022, Upgrade sent Plaintiff an email and again informed Plaintiff that he was denied for the personal loan.

65.     Upon information and belief, Upgrade denied Plaintiff because both Trans Union and Experian were reporting him as "deceased."

66.     Upon information and belief, had Trans Union and Experian not reported Plaintiff as deceased, Plaintiff would have been more likely to be approved for the personal loan with Upgrade.

67.      On or about June 6, 2022, Plaintiff reviewed his Experian consumer report again.

68.     Plaintiff was confused by Experian's reporting.

69.     Experian removed the deceased notation from the January Account tradeline.

70.     Upon information and belief, Experian removed the deceased notation from the January Account tradeline in response to Plaintiff's dispute.

71.     However, upon information and belief, Experian did not remove the deceased notation from the March Account tradeline.

72.     Experian continued to report the deceased notation in the March Account tradeline.

73.     It is unclear why Experian removed the deceased notation from one Fingerhut tradeline and not the other after receiving Plaintiff's dispute.

74.     In the alternative, upon information and belief, Experian allowed the deceased notation to reappear in the March Account tradeline after removing it in response to Plaintiff's dispute on or about May 1, 2022.

75.     On or about June 6, 2022, Plaintiff tried to call Experian again.

76.     Each time Plaintiff called and typed in his social security number, Experian's automated phone system hung up.

77.     Upon information and belief, Plaintiff was unable to get through to Experian because Experian was still reporting that Plaintiff was deceased.

78.     On or about June 9, 2022, Plaintiff attempted to view his Equifax and Trans Union consumer reports.

79.     Plaintiff was able to get a copy of his Equifax consumer report.

80.     Non-party Equifax was not reporting Plaintiff as "deceased."

81.     Plaintiff was unable to get a copy of his Trans Union consumer report.

82.     Upon information and belief, Plaintiff was unable to get a copy of his Trans Union consumer report because Trans Union was reporting that Plaintiff was deceased.

83.     Upon information and belief, as of the filing of this Complaint, Experian and Trans Union are still reporting Plaintiff as deceased.

84.    Upon information and belief, after receiving Plaintiff's dispute, Experian forwarded Plaintiff's dispute to WebBank and Fingerhut.

85.    Upon information and belief, WebBank and Fingerhut received notice of Plaintiff's dispute from Experian.

86.    Upon information and belief, WebBank and Fingerhut failed to conduct a reasonable investigation of Plaintiff's dispute.

87.    Upon information and belief, WebBank and Fingerhut failed to recognize that they had each inaccurately informed the consumer reporting agencies that Plaintiff was deceased.

88.    Upon information and belief, WebBank and Fingerhut continued to inaccurately report that Plaintiff was deceased each time it sent updates to the consumer reporting agencies.

89.    Consequently, the consumer reporting agencies continued to report varying information.

90.    After allegedly "investigating" Plaintiff's dispute, Experian continued to report that Plaintiff was deceased.

91.    WebBank and Fingerhut knew that Experian and Trans Union were reporting that Plaintiff was deceased but failed to update and correct the reporting.

92.    Instead, WebBank and Fingerhut continued to report inaccurate information to the consumer reporting agencies indicating that Plaintiff was deceased.

93.    Upon information and belief, non-party Equifax completely suppressed the continued inaccurate reporting by WebBank and Fingerhut.

94.     Upon information and belief, Experian failed to suppress the continued inaccurate reporting furnished by WebBank and Fingerhut, even after receiving Plaintiff's dispute.

95.     It is unclear why Experian continued to report Plaintiff as deceased in the March Account tradeline after receiving Plaintiff's dispute.

96.     Upon information and belief, Experian has been sued by other consumers in the past who have alleged its dispute procedures were unreasonable and violative of the FCRA.

97.     Therefore, Experian had notice as to its deficient procedures.

98.     Upon information and belief, Experian and Trans Union failed to maintain reasonable procedures to suppress the repeatedly inaccurate information furnished by WebBank and Fingerhut, despite being on notice that the information was inaccurate.

99.     Upon information and belief, neither Experian nor Trans Union received information directly from the Social Security Administration that indicated Plaintiff was deceased.

100.    Rather, Experian and Trans Union "learned" that Plaintiff was "deceased" from the furnisher(s), WebBank and Fingerhut.

101.    Upon information and belief, WebBank and Fingerhut furnished information to the consumer reporting agencies beginning in or around April 2022 that indicated Plaintiff was "deceased."

102.    Simultaneously, Experian and Trans Union were receiving information from other data furnishers that indicated Plaintiff was applying for credit, requesting copies of his consumer reports, using accounts, and making monthly payments.

103.    Upon information and belief, Experian and Trans Union knew or had reason to know WebBank and Fingerhut are unreliable furnishers of consumer information.

104.    Upon information and belief, Experian and Trans Union blindly reported the information furnished by WebBank and Fingerhut without regard for its unreliability.

105.    Upon information and belief, Experian and Trans Union inaccurately reported that Plaintiff was deceased while simultaneously receiving information that directly conflicted with Plaintiff being deceased.

106.    Upon information and belief, for at least two months after inaccurately reporting that Plaintiff was "deceased," Trans Union continued to report Plaintiff's ongoing transactions.

107.    For at least two months after inaccurately reporting that Plaintiff was "deceased," Experian continued to report Plaintiff's ongoing transactions.

108.    Typically, deceased persons do not apply for credit, request copies of their consumer reports, use accounts, or make monthly payments (in the absence of fraud).

109.    Upon information and belief, Experian and Trans Union also reported that Plaintiff does not have a credit score.

110.    Upon information and belief, a consumer that does not have a credit score indicates that a consumer has no credit history and/or the credit score is incalculable.

111.    Plaintiff has more than ten open accounts on his consumer reports, many of which are positive.

112.    A person with at least ten credit accounts undeniably has enough credit history to calculate a credit score.

113.    Upon information and belief, the inaccurate deceased notations in the Fingerhut tradelines are why Experian and Trans Union reported that Plaintiff did not have a credit score.

114.    Therefore, Plaintiff's ongoing credit transactions and incalculable credit score gave Experian and Trans Union constructive notice that Plaintiff was not "deceased," and the information furnished by WebBank, and Fingerhut was inaccurate.

115.    Experian's inaccurate reporting is particularly egregious because it had actual notice from Plaintiff that he was not deceased.

116.    Plaintiff initiated a dispute of the "deceased" notation with Experian on or about May 1, 2022.

117.    But despite having notice of Plaintiff's aliveness and reporting his ongoing credit transactions, Experian and Trans Union continued to sell information to third parties that indicated Plaintiff was "deceased."

118.    Upon information and belief, a deceased person does not have a consumer report that is accessible to creditors.

119.    Upon information and belief, a deceased notation on a consumer report indicates a high risk of fraud and is scored as a high risk of fraud.

120.    Upon information and belief, Experian and Trans Union continued to report Plaintiff as "deceased" without flagging Plaintiff's credit file for fraud or identity theft when third parties requested his credit file.

121.    Upon information and belief, Experian and Trans Union sold Plaintiff's consumer credit information to third parties while reporting Plaintiff as deceased and/or that Plaintiff had no credit score.

122.    Upon information and belief, Experian sold Plaintiff's consumer credit information to one or more third parties, including but not limited to: Upgrade, One Main, Wells Fargo, Credit One Bank, Capital One/Kohl's, Synchrony Financial, and Clarity Plain Green.

123.    Upon information and belief, Trans Union sold Plaintiff's consumer credit information to one or more third parties, including but not limited to: Upgrade.

124.    As a direct result of Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to: stress, anxiety, financial strain, mental anguish, sleepless nights, emotional distress, embarrassment, wasted time, invasion of privacy, decreased creditworthiness, credit denial, and other damages continuing in nature.

125.    As a direct result of Defendants' conduct, Plaintiff was denied for a personal loan through Upgrade.

126.    As a direct result of Defendants' conduct, Plaintiff has involuntarily removed himself from the credit market, out of sheer fear that he will be denied due to the inaccurate deceased notation.

127.    As a direct result of Defendants' conduct, Plaintiff is unable to acquire a personal loan to assist with consolidating his bills and paying them off.

128.    As a direct result of Defendants' conduct, Plaintiff's time has been wasted disputing, contacting the Defendants, and communicating with the SSA.

129.    Plaintiff is frustrated, embarrassed, and humiliated due to Defendants' conduct.

130.    As a direct result of Defendants' conduct, Plaintiff suffers from decreased creditworthiness.

131.    Defendants' conduct has caused Plaintiff significant stress and frustration.

132.    Plaintiff has difficulty falling asleep and suffers from sleepless nights as a result of Defendants' conduct.

133.    Defendants' conduct has also caused Plaintiff to suffer from high blood pressure.

134.    Plaintiff is also afraid that Defendants' conduct and the deceased notation will cause Plaintiff to lose out on a job he recently applied for with the United States Postal Service.

135.    Plaintiff and his fiancé have also had tension between them, and his fiancé has threatened to leave him due to the Defendants' conduct.

136.    Upon information and belief, Defendants' conduct also caused Plaintiff's banks to freeze his bank accounts.

137.    As a direct result of Defendants' conduct, Plaintiff worries that he will be unable to financially support his family because of his inability to get credit; Plaintiff's

fiancé, eighteen-month-old daughter, and two stepsons (ages fourteen and seventeen) all rely on him financially for support.

## <u>COUNT I</u>
### **WebBank and Fingerhut's Violations of 15 U.S.C. § 1681s-2(b)**

138.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

139.    At all times pertinent hereto, WebBank and Fingerhut were "persons" as that term is defined by 15 U.S.C. § 1681a(b) and "furnishers of information" to the consumer reporting agencies, including Experian and Trans Union.

140.    WebBank and Fingerhut have a duty to provide accurate information to consumer reporting agencies, and to correct inaccurate information after receiving notice of a dispute directly from a consumer, *see* 15 U.S.C. § 1681s-2(a).

141.    WebBank and Fingerhut failed to follow reasonable procedures to ensure they only provided maximally accurate information about Plaintiff and Plaintiff's accounts to the consumer reporting agencies.

142.    On at least one occasion within the past two years, by example only and without limitation, WebBank and Fingerhut also violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

143.    Upon receipt of a consumer dispute from a consumer reporting agency, furnishers like WebBank and Fingerhut are required to: conduct an investigation with respect to the disputed information; review all relevant information; report the results of the investigation to the consumer reporting agency; and, if the investigation reveals that

the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the furnisher has provided the inaccurate information.

144.    Upon information and belief, WebBank and Fingerhut received notice of Plaintiff's dispute from Experian in or around May 2022.

145.    After WebBank and Fingerhut were notified of the issues with the January Account and March Account, WebBank and Fingerhut failed to properly investigate Plaintiff's dispute.

146.    Consequently, WebBank and Fingerhut failed to furnish maximally accurate information regarding Plaintiff's Account to Experian and Trans Union.

147.    Despite receiving and allegedly "investigating" Plaintiff's dispute, WebBank and Fingerhut failed to recognize that they had inaccurately informed the CRAs that Plaintiff was deceased.

148.    Upon information and belief, WebBank and Fingerhut also failed to send its investigation results to the other consumer reporting agencies that had received inaccurate or incomplete information about Plaintiff and Plaintiff's accounts.

149.    Upon information and belief, WebBank and Fingerhut's actions in the instant matter are representative of their normal policies and procedures.

150.    Upon information and belief, WebBank and Fingerhut's regular investigation procedures do not require a reasonable review of a tradeline that is disputed by a consumer. Rather, WebBank and Fingerhut's regular procedures allow it to respond to disputes after conducting only a cursory review of the account(s) at issue.

151.    The above-described conduct violated 15 U.S.C. § 1681s-2(b).

152.    WebBank and Fingerhut violated 15 U.S.C. § 1681s-2(b) in the following manner:

i.    By willfully and/or negligently failing to conduct an investigation of the disputed information;

ii.    By willfully and/or negligently failing to review all relevant information concerning Plaintiff and Plaintiff's accounts;

iii.    By willfully and/or negligently failing to report the results of its investigation of the disputed information to all credit reporting agencies;

iv.    By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation of his dispute;

v.    By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation of the disputed information;

vi.    By willfully and/or negligently failing to permanently block the reporting of the inaccurate information and continuing to report and furnish inaccurate or incomplete information about Plaintiff and Plaintiff's accounts to consumer reporting agencies; and

vii.    By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

153.    As a result of this conduct, action, and inaction of WebBank and Fingerhut, Plaintiff has suffered actual damages, including but not limited to: stress, anxiety, financial

strain, mental anguish, sleepless nights, emotional distress, embarrassment, wasted time, invasion of privacy, decreased creditworthiness, credit denial, and other damages continuing in nature.

154.   WebBank and Fingerhut's violations of the FCRA were both willful and knowing. Therefore, WebBank and Fingerhut are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

155.   Alternatively, WebBank and Fingerhut's violations of the FCRA were negligent. Therefore, WebBank and Fingerhut are each individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

156.   In any event, WebBank and Fingerhut are each individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

**<u>COUNT II</u>**
**Experian and Trans Union's Violations of 15 U.S.C. § 1681e(b)**

157.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

158.   The FCRA requires consumer reporting agencies, like Experian and Trans Union, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximal accuracy. 15 U.S.C. § 1681e(b).

159.   Experian and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible

accuracy in the preparation and maintenance of Plaintiff's consumer report(s) and credit files.

160.    Experian and Trans Union failed to establish or maintain procedures that would prevent them from reporting information contrary to their own knowledge and data.

161.    Specifically, Experian and Trans Union failed to maintain procedures that ensured they did not report Plaintiff as deceased while simultaneously updating his consumer report(s) with information that indicated Plaintiff was alive (monthly payments, credit applications, etc.).

162.    If Experian and Trans Union did in fact believe that Plaintiff was deceased, they unreasonably failed to maintain any procedure or policy that alerted them to ongoing credit transactions allegedly associated with a deceased person's personal identifiers.

163.    If Experian and Trans Union did in fact believe that Plaintiff was deceased, they unreasonably failed to flag Plaintiff's credit file for fraud or identity theft when third parties requested his credit file.

164.    Additionally, Experian failed to maintain reasonable procedures to ensure that it did not inaccurately report Plaintiff as "deceased" after receiving Plaintiff's dispute.

165.    Instead, Experian continued to blindly rely on inaccurate information provided by WebBank and Fingerhut despite possessing and reporting information that directly conflicted with Plaintiff being "deceased."

166.    It is wholly unreasonable to maintain procedures that allow blind reliance on the information provided by the furnisher of the disputed information, especially when the

- 20 -

information provided by the furnisher conflicts with information the consumer reporting agency knows to be true.

167.    As a result of Experian and Trans Union's conduct, action, and inaction, Plaintiff has suffered actual damages, including but not limited to: stress, anxiety, financial strain, mental anguish, sleepless nights, emotional distress, embarrassment, wasted time, invasion of privacy, decreased creditworthiness, credit denial, and other damages continuing in nature.

168.    Experian and Trans Union's violations of the FCRA were willful and knowing. Therefore, Experian and Trans Union are each individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

169.    Alternatively, Experian and Trans Union's violations of the FCRA were negligent. Therefore, Experian and Trans Union are each individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

170.    In any event, Experian and Trans Union are each individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
### Experian's Violations of 15 U.S.C. § 1681i

171.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

172.    On or about May 1, 2022, Plaintiff disputed the inaccurate deceased notations with Experian.

173.    Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in their credit file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

174.    Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information it reported about Plaintiff was accurate.

175.    Upon information and belief, Experian continued to blindly rely on inaccurate information provided by WebBank and Fingerhut despite possessing and reporting information that directly conflicted with Plaintiff being "deceased."

176.    Upon information and belief, Experian had reason to know that the information furnished by WebBank and Fingerhut was inaccurate or otherwise unreliable.

177.    Experian possessed and reported information about Plaintiff that directly contradicted with Experian's reporting of Plaintiff as "deceased."

178.    Yet despite knowledge of the information's unreliability, Experian made no independent effort to verify its accuracy.

179.    In fact, Experian even failed to confirm that the information it reported about Plaintiff was consistent with the rest of his Experian consumer report.

180.    Additionally, upon information and belief, Experian violated the FCRA by failing to provide WebBank and Fingerhut with all the relevant information regarding Plaintiff, his dispute, and the accounts. 15 U.S.C. § 1681i(a)(2)(A).

181.    Furthermore, Experian violated the FCRA by failing to promptly delete the inaccurate information from Plaintiff's credit file or correct the inaccurate information upon reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

182.    As a result of Experian's conduct, action, and inaction, Plaintiff has suffered actual damages which have been further described above.

183.    Experian's violations of the FCRA were willful and knowing. Therefore, Experian is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

184.    Alternatively, Experian's violations of the FCRA were negligent. Therefore, Experian is individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

185.    In any event, Experian is individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

186.    Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JD Bennett, respectfully requests judgment be entered against Defendants, for the following:

A.    Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B.    Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C.    Punitive damages pursuant to 15 U.S.C. § 1681n;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o

and/or 1681n;

E.      All pre-judgment and post-judgment interests as may be allowed

under the law; and

F.      Any other and further relief as the Court may deem just and proper.

Respectfully submitted this 6th day of July 2022.

/s/ Dawn McCraw

Dawn McCraw, WA # 54543
Of Counsel
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5585
F: (818) 600-5485
E: dawn@pricelawgroup.com

Attorney for Plaintiff
JD Bennett